# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BARNES & NOBLE BOOKSELLERS, Inc.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 05-2011-CM |
| ) | |
| **TOWN CENTER PLAZA, L.L.C.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This lawsuit arises from a lease. Plaintiff Barnes & Noble Booksellers, Inc., which operates bookstores throughout the United States, is a tenant in Town Center Plaza (the "Shopping Center"), a shopping center in Leawood, Kansas, now owned by defendant Town Center Plaza, LLC. Under its lease for space at the Shopping Center, plaintiff is responsible for a proportionate share of specified expenses relating to the Shopping Center. Plaintiff alleges that defendant has overcharged it for its proportionate share of certain expenses related to the operation and management of the common areas of the Shopping Center. This matter is before the court on the parties' motions for partial summary judgment (Docs. 70 and 72).

## I. FACTUAL BACKGROUND[1]

Pursuant to a lease dated October 14, 1994 ("Lease"), plaintiff leased space at Town Center

---

[1] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56. The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

Plaza, a shopping center in Leawood, Kansas.  Defendant was not the original landlord of the Shopping Center.  Prior to the 1996 opening of the Shopping Center, the original landlord assigned plaintiff's lease to defendant, and, thus, defendant became the new landlord under the Lease.  Pursuant to the terms of the Lease, plaintiff is required to pay to defendant a proportionate share of certain expenses related to the operation and management of the Shopping Center.  Among other expenses, plaintiff pays a proportionate share of the common area maintenance ("CAM") and insurance expenses and makes a contribution to the Shopping Center's marketing fund.

Under the Lease, defendant estimates the coming year's expenses, including the CAM and insurance expenses.  Plaintiff pays 1/12 of the estimates each month.  After the year ends, defendant conducts a year-end reconciliation.  If the year's estimates were too low, plaintiff pays defendant the difference; if the year's estimates were too high, defendant issues a credit to plaintiff.  Defendant sent the 1997 year-end reconciliation to plaintiff on or about April 1, 1998.  Defendant sent the 1998 year-end reconciliation to plaintiff on or about April 15, 1999.  Plaintiff timely paid the 1997 and 1998 expenses.

The contribution to the Shopping Center's marketing fund is not included in the expense estimates.  The amount of the marketing contribution is increased annually, but plaintiff is only obligated to pay the marketing contribution if all other Shopping Center tenants are required to similarly participate in the marketing fund:

> Provided that all other tenants in the Shopping Center are required to
> similarly participate, TENANT covenants and agrees to participate in a
> Marketing Fund ("Marketing Fund") which is recognized by the
> LANDLORD as the Marketing Fund.  TENANT covenants and agrees to
> pay to LANDLORD as additional rent a "Marketing Charge" as described
> below, and the Marketing Charge paid by TENANT and other tenants of
> the Shopping Center will be deposited into the Marketing Fund. . . .

> Provided that all other tenants in the Shopping Center are required to pay a similar charge, TENANT shall pay to LANDLORD, as additional rent, in equal monthly installments in advance on the first day of each calendar month of the Term as a Marketing Charge, the amount set forth in Section 1.1(i). The Marketing Charge shall be increased annually by the greater of (i) Fifty Dollars ($50.00) per annum, or (ii) the Index Increase as defined in Section 12.16.

Lease at ¶ 9.1. The charges for the 1996-1999 marketing contributions were invoiced prior to December 2, 1999. Plaintiff paid all of the marketing contributions that were invoiced through September 29, 2005. The parties do not dispute the amount of the contributions, but whether plaintiff was required to make the contributions.

The parties also dispute whether the Lease requires plaintiff to pay self-insurance charges. With respect to insurance, Section 2.4 of the Lease provides:

> TENANT hereby agrees to pay LANDLORD as additional rent, TENANT'S Proportionate Share of maintaining and operating the Common Areas situated within Phase I of the Shopping Center. "Operation Costs" shall mean the total cost and expense incurred in operating, maintaining, replacing and repairing the Common Areas and Shopping Center, including without limitation, . . . the costs of all types of insurance coverage carried by LANDLORD covering the Common Areas and Phase I of the Shopping Center, as required hereunder. . . .

Plaintiff retained American Landmark Companies, Inc. ("American Landmark") to review defendant's financial books and records in connection with the alleged overcharges in the expenses related to the operation and management of the common areas of the Shopping Center. On or about March 27, 2002, plaintiff, through American Landmark, requested to examine or audit the amount of the expenses that had been charged to plaintiff. Plaintiff also requested a list of the marketing fund contributions paid by all tenants of the Shopping Center. In April 2002, defendant's representative responded that 100% of

defendant's tenants contributed to the marketing fund, but did not provide a list of the tenants. In July 2002, defendant reiterated that all of the tenants participated in the marketing fund and provided plaintiff a list of the tenants that contribute to the fund and their respective contribution. On July 24, 2002, plaintiff disputed defendant's representations based upon information provided by defendant's representatives. In November 2004, the Jones Store opened at the Shopping Center. The Jones Store has never participated in the marketing fund.

Plaintiff filed this lawsuit on December 2, 2004[2] alleging a breach of contract. Plaintiff claims that defendant failed to accurately and correctly calculate the expenses to be paid by plaintiff and determine plaintiff's proportionate percentage of the expenses in accordance with the terms of the Lease. Plaintiff further alleges that defendant improperly charged plaintiff for marketing contributions from 1996 through September 2005. On August 17, 2005, defendant sent plaintiff a letter saying it was issuing credits to plaintiff for charges associated with trash removal and water and sewer incurred for 1997 and 1998. In the August 17, 2005 letter, defendant stated "[defendant] is mindful of the costs and uncertainties engendered by litigation and in lieu of litigation over this issue, has decided to give [plaintiff] the requested credit for 1997-2003. Please be advised, however, that [defendant]'s issuance of this credit is not, and should not be construed to be, an admission to or agreement with the position of [plaintiff], or an admission of any liability whatsoever to [plaintiff] on this issue." In September 2005, defendant issued plaintiff credit for the marketing contributions plaintiff paid for 1999 through 2005.

---

[2] Although plaintiff claims it filed its original petition on November 29, 2004, the court presumes it meant December 2, 2004, as the original petition is file-stamped December 2, 2004 and the docket in *Barnes & Noble Booksellers v. Town Center Plaza, Inc.*, Johnson County case no. 04-cv-9017, shows the petition was filed on December 2, 2004. *See* Ex. A to the Petition (Doc. 1) and http://www.jococourts.org/civroa.aspx?which=04CV09017. In any event, nothing in the record supports plaintiff's claim that it originally filed its petition on November 29, 2004.

Defendant seeks summary judgment on plaintiff's claims for the marketing fund charges invoiced prior to December 2, 1999 and the common area maintenance expenses for 1997 and 1998. Defendant asserts that these claims are barred by Kansas's five-year statute of limitations. Plaintiff seeks partial summary judgment on its breach of contract claim for (1) defendant's alleged breach of Paragraph 9.1 of the Lease by requiring plaintiff to pay a marketing fund contribution when all of the other tenants were not paying a similar contribution; and (2) defendant's alleged breach of Paragraph 2.4 of the Lease by including an allocation of estimated future deductible costs and potential expenses for its "Self-Insurance program." The Lease designates Kansas in its choice of law provision.

## II. STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

### A. Statute of Limitations

Pursuant to K.S.A. § 60-511, claims for breach of a written contract must be brought within five years of the date the cause of action accrued. K.S.A. §§ 60-510; 60-511. A cause of action for breach of a written contract accrues when the breach occurs, irrespective of plaintiff's knowledge of the breach. *Freeto Constr. Co. v. Am. Hoist & Derrick Co.*, 457 P.2d 1, 5 (Kan. 1969). Plaintiff filed this cause of action on December 2, 2004. In order to survive the applicable five-year statute of limitations, plaintiff's

claims must have accrued sometime after December 2, 1999.

*1. Marketing Fund Contributions*

Defendant claims, and plaintiff does not dispute, that plaintiff's breach of contract claim for the marketing fund contributions accrued when each contribution was invoiced. The court agrees. *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 356 F. Supp. 2d 1203, 1212-13 (D. Kan. 2005) (recognizing that under Kansas law, claims under a contract requiring continuous performance arise when each performance is breached). The 1996 through 1999 contributions were all invoiced prior to December 2, 1999. Plaintiff's claims arising from these contributions accrued prior to December 2, 1999 and are therefore barred by the statute of limitations. Plaintiff argues that the statute of limitations does not apply to its claim. Plaintiff contends that defendant is estopped from asserting the statute of limitations defense because defendant intentionally concealed material information about the marketing fund contribution from plaintiff.[3]

Under the doctrine of equitable estoppel, a defendant may be precluded from relying on the statute of limitations defense if it has induced plaintiff to delay filing the action either through affirmative acts or through silence when under an affirmative duty to speak. *Zurn*, 746 F. Supp. at 1056. "To constitute concealment of a cause of action . . . there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Friends Univ. v. W.R. Grace & Co.*, 608 P.2d 936, 941 (Kan. 1980). The party asserting an estoppel argument must also demonstrate "some

---

[3] Plaintiff asserts its defense as an equitable estoppel argument; defendant, however, couches plaintiff's defense as arising under the doctrine of fraudulent concealment. As defendant asserts, under Kansas law, fraudulent concealment does not toll the statute of limitations unless the plaintiff's claim for relief is grounded in fraud. *Zurn Constructors, Inc. v. B.F. Goodrich Co.* 746 F. Supp. 1051, 1056 (D. Kan. 1990). Plaintiff's claim is grounded in contract, not fraud; thus, under Kansas law, plaintiff's claims do not toll the statute of limitations under the doctrine of fraudulent concealment. The doctrine of equitable estoppel, however, does apply to breach of contract claims. *Id.*

change in position in reliance on the adversary's misleading statement" and explain why its due diligence did not lead to the discovery of its cause of action. *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 790 P.2d 404, 417 (Kan. 1990) (citation omitted) (requiring a change in position); *Friends*, 608 P.2d at 941-42 (requiring due diligence).

Plaintiff contends that defendant intentionally concealed information about the marketing contributions in March and July 2002 when defendant stated that all of the Shopping Center tenants paid a marketing contribution. Plaintiff does not explain how defendant's March and July 2002 statements prevented plaintiff from discovering its cause of action or how defendant's actions changed plaintiff's position with respect to the marketing contributions. The record indicates that even after defendant's March and July 2002 statements, plaintiff continued to dispute defendant's assertions that all of the Shopping Center's tenants paid the contribution fee. Defendant's March 2002 statement did not prevent plaintiff from continuing its inquiry or demanding to know which stores were considered tenants for purposes of the marketing contribution. Defendant's July statement was accompanied with a list of each tenant that paid the contribution, which should have helped, not hindered, plaintiff's investigation. Yet, even with this knowledge, plaintiff, as is its right, continued to negotiate with defendant and attempt to resolve the dispute without legal action. Plaintiff has not demonstrated that defendant's actions prevented plaintiff from learning of its cause of action or that it changed its position in reliance on defendant's statements. Plaintiff does not discuss due diligence or explain why with due diligence it did not or could not have discovered this cause of action. Nothing in the record suggests that plaintiff attempted to get information about these charges prior to March 2002 or that plaintiff's investigation was deterred by the information and correspondence defendant provided in March and July 2002.

Plaintiff has not shown that defendant engaged in fraudulent or intentional concealment to prevent the discovery of plaintiff's cause of action with respect to the marketing fund contributions. Therefore, the court finds plaintiff's claims arising from the marketing fund charges invoiced prior to December 2, 1999 are barred by the statute of limitations.

*2. Common Area Maintenance and Insurance Charges*

Plaintiff alleges that defendant overcharged it for CAM and insurance charges from 1997 through 2003. Defendant contends that plaintiff's claims arising from CAM and insurance charges that were reconciled prior to December 2, 1999 - the 1997 and 1999 charges - are barred by the five-year statute of limitations set forth in K.S.A. § 60-511. Plaintiff does not dispute that these breaches occurred more than five years before plaintiff filed this suit. Instead, plaintiff argues that the statute of limitations does not apply to these claims. Without citing any authority, plaintiff contends that defendant waived its statute of limitations defense by offering plaintiff a partial credit for the 1997 and 1998 CAM and insurance payments.

Under Kansas law, waiver is the voluntary and intentional abandonment of a known right. *Stafford v. Crane*, 382 F.3d 1175, 1180 (10th Cir. 2004) (citing *City of Topeka v. Watertower Place Dev. Group*, 959 P.2d 894, 901 (Kan. 1998)); *Sultani v. Bungard*, 131 P.3d 1264, 1267 (Kan. App. 2006). When offering the partial credit, defendant did not affirmatively relinquish its defenses in this litigation; in fact, defendant specifically stated that it was not admitting liability or agreeing with plaintiff's position. Plaintiff has shown no evidence that defendant voluntarily and intentionally gave up its statute of limitations defense with respect to the CAM or insurance claims. Therefore, the court finds that the statute of limitations is applicable and bars plaintiff's claims arising from the 1997 and 1998 CAM and insurance

charges.

## B. Breach of Contract Claims

Under Kansas law the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by plaintiff; (3) breach of the contract by defendant; and (4) damages to plaintiff resulting from the breach. *The Bradbury Co. v. Teissier-duCros*, 387 F. Supp. 2d 1167, 1171 (D. Kan. 2005). The parties do not dispute that the Lease is a valid contract, and that plaintiff performed under the terms of the Lease. The disputed elements are (1) whether defendant breached the contract by invoicing plaintiff for marketing contributions when other tenants were not required to pay the contribution or charging for the self-insurance; and (2) whether defendant's breach caused plaintiff damages.

*1. Marketing Fund Contributions*

Plaintiff seeks partial summary judgment for claims arising from the marketing fund contributions. Plaintiff argues that defendant breached Section 9.1 of the Lease by requesting and receiving marketing contributions from plaintiff when other tenants were not paying similar marketing contributions. Plaintiff does not specify which payments it believes were improperly charged, but as plaintiff's claims for the charges invoiced before December 2, 1999 are barred by the statute of limitations, only the charges invoiced after December 2, 1999 remain in dispute.

Defendant does not dispute that requiring plaintiff to participate in the marketing fund when other tenants did not participate is a breach of Section 9.1 of the Lease. To prevail on its motion for summary judgment, plaintiff must show that not all tenants were required to participate in the marketing fund. Defendant argues that (1) there is no evidence in the record that one or more of the Shopping Center

tenants was excused from participating in the marketing fund prior to November 2004; and (2) plaintiff's claims for charges after November 2004 have been resolved because defendant issued plaintiff a credit for the marketing contributions made from 1999 through 2005.

Since it opened in November 2004, the Jones Store has never been required to contribute to the marketing fund. The record does not show whether other tenants were required to participate in the marketing fund. The record only shows that as of November 2004 at least one tenant, the Jones Store, was not required to participate in the marketing fund. Because there is no evidence in the record that one or more of the Shopping Center tenants was excused from participating in the marketing fund prior to November 2004, the court cannot grant summary judgment on plaintiff's claims for pre-November 2004 contributions. Plaintiff's motion is denied with respect to those claims.

Defendant does not dispute that the charges plaintiff incurred after November 2004 were a breach of the Lease, but argues that there is no issue for the court to resolve because defendant issued plaintiff credit for the charges. The court disagrees. Defendant's unilaterally-issued credit does not completely resolve this dispute. Plaintiff acknowledges that it has received full credit for the marketing contributions, but alleges it is entitled to attorney fees and interest under the Lease. The motion before the court is for partial summary judgment on defendant's liability, not plaintiff's damages. There is no genuine dispute of material fact as to whether defendant breached the contract. Additionally, by paying defendant for the marketing contributions charged after the Jones Store opened, which defendant was not entitled to receive, plaintiff was damaged in the amount of each payment. Plaintiff is entitled to summary judgment for these marketing contributions. While plaintiff cannot recover additional monies for the contribution payments, plaintiff is entitled to seek attorney fees and interest for the claims arising out of the contribution payments

for November 2004 and subsequent months, as provided in the Lease.

Plaintiff is entitled to summary judgement on the issue of defendant's liability for the marketing contributions invoiced after November 2004. Summary judgment is denied as to plaintiff's claims for marketing contributions made before November 2004.

*2. Self-Insurance Charges*

Plaintiff contents that defendant breached Section 2.4 of the Lease by including an allocation of estimated future deductible costs and potential expenses for its Self-Insurance program, rather than defendant's "total cost and expense incurred" for insurance. Specifically, plaintiff alleges (1) defendant improperly included self-insured deductible costs in defendant's "total cost and expense incurred" for insurance when calculating plaintiff's proportionate share of defendant's cost of insurance for 1997-2003; and (2) defendant improperly requested and received reimbursements from plaintiff for defendant's costs of insurance that are estimates rather than the "total cost and expense incurred."

To support its motion, plaintiff relies upon factual assertions that are not set forth in its statements of fact. As a result, defendant has not been given an opportunity to dispute the facts upon which plaintiff relies. Additionally, plaintiff does not "refer with particularity to those portions of the record upon which [it] relies" as required by Local Rule 56.1.[4] To the extent plaintiff fails to refer to the evidentiary record, or if the court can find no support in the record before it, the court may not consider those alleged facts if not admitted by defendant. Even if the court were to consider the facts as alleged in plaintiff's motion for summary judgment, the court finds there is a genuine dispute of material facts as to whether the insurance

---

[4] The court directs counsel for both parties to consult all applicable rules and court guidelines in the future.

-11-

charges are allowed under the Lease. These issues can only be resolved by the trier of fact evaluating the evidence at trial. Plaintiff's motion for summary judgment for the self-insurance charges is denied.

## IV. CONCLUSION

The court has considered all of the arguments presented by the parties, although they are not all discussed here. Some of the arguments are irrelevant to the claims at issue in this case. Others have been rendered moot by the court's decision here. After considering all of the evidence of record and the positions of the parties, the court finds that plaintiff's claims for the marketing fund charges invoiced prior to December 2, 1999 and the common area maintenance expenses for 1997 and 1998 are barred by the statute of limitations. The court also finds that defendant breached the Lease by requiring plaintiff to pay a marketing fund contribution after November 2004. The court further finds that there are genuine issues of material fact as to whether defendant breached the Lease by charging plaintiff a marketing contribution between December 2, 1999 and November 2004 and/or charging a self-insurance charge.

**IT IS THEREFORE ORDERED** that defendant's Motion for Partial Summary Judgment (Doc. 70) is granted.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Partial Summary Judgment (Doc. 72) is granted in part and denied in part.

Dated this 23rd day of May 2006, at Kansas City, Kansas.

>                               **s/ Carlos Murguia**
>                               **CARLOS MURGUIA**
>                               **United States District Judge**